Don Springmeyer, Esq. (Nevada Bar #1021)
dspringmeyer@kempjones.com
Michael J. Gayan, Esq. (Nevada Bar #11135)
m.gayan@kempjones.com
Madison Zornes-Vela, Esq. (Nevada Bar #13626)
m.zornes-vela@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Tel.: (702) 385-6000
Fax: (702) 385-6001

Philip L. Fraietta *(Pro hac vice forthcoming)*
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: (646) 837-7150
Fax: (212) 989-9163

Ari J. Scharg *(Pro hac vice forthcoming)*
ascharg@edelson.com
Benjamin Thomassen *(Pro hac vice forthcoming)*
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel.: (312) 589-6370
Fax: (312) 589-6378

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MEGAN JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHECK THEM, INC., a Wyoming corporation,<br><br>Defendant. | Case Number:<br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

1

Plaintiff Megan Jackson brings this class action complaint against Defendant Check Them, Inc. ("CheckThem" or "Defendant") to put an end to its unlawful practice of using the names and identities of Nevada residents without their consent in order to promote its service. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows upon personal knowledge as to her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her own attorneys.

## NATURE OF THE ACTION

1. Defendant CheckThem operates a website—checkthem.com—that sells access to a database containing proprietary information about people to anybody willing to pay for a monthly subscription.

2. To market its service, CheckThem encourages prospective customers to perform a free people search on its website. When consumers perform a free search for an individual—by typing the individual's first and last name into the search bar—CheckThem displays a preview page featuring the searched individual's full name alongside certain uniquely identifying information, including aliases, location, relatives, and age. The purpose of this page is twofold: first, it shows potential customers that CheckThem's database contains the *specific* individual they searched for and represents that a paid subscription grants access to much more information about the individual than the "free" preview; and second, it offers to sell them a paid subscription, where they can access proprietary information about anybody in its database. In other words, CheckThem does not offer to sell information about the individuals searched on its website, but rather, uses their identities to sell subscriptions to its paid service.

3. Unsurprisingly, the people appearing in these advertisements never provided CheckThem with their consent (written or otherwise) to use their identities for any reason, let alone for marketing purposes.

4. By using Nevada residents' identities in its advertisements without consent and for its own commercial gain, CheckThem violated—and continues to violate—the Nevada Right of Publicity Law, Nev. Rev. Stat. § 597.770, *et seq*.

2

**PARTIES**

5. Plaintiff Megan Jackson is a natural person and a citizen of the State of Nevada.

6. Defendant Check Them, Inc. is a corporation existing under the laws of the State of Wyoming with its principal place of business located at 8033 West Sunset Boulevard, #3800, Los Angeles, California 90046.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

8. This Court has personal jurisdiction over Defendant because it transacts business in this District, misappropriates the identities of people that it knows reside in this District, and the unlawful conduct alleged in the Complaint occurred in this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events giving rise to this claim occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

*The Nevada Right of Publicity Law*

10. In 1989, the Nevada Legislature specified that "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person" and "[a]ny commercial use by another . . . requires the written consent of that person," Nev. Rev. Stat. § 597.790, and as a result, passed the Nevada Right of Publicity Law to protect individual property rights and prevent the exploitation of individuals' identities for another's commercial gain.

11. The Law protects individuals from the unauthorized use of *any* of their attributes, including but not limited to, their names, signatures, photographs, images, likenesses, or voices in the sale or advertisement of goods, merchandise, products, and services.

12. In fact, the Nevada Right of Publicity Law states that the provisions of the statute "apply to any commercial use within this state of a living or deceased person's name, voice,

1  signature, photograph or likeness regardless of the person's domicile." Nev. Rev. Stat. § 597.780.
2  Notably, the Nevada Right of Publicity Law does not require the person seeking relief under the
3  Law to be a public figure.

4  ***CheckThem Uses Individuals' Names to Promote a Paid Subscription to Its Database***

5        13.    CheckThem owns and operates a website that sells paid-subscription access to
6  "comprehensive background check services." CheckThem compiles its public records database, in
7  part, from public records and social media profiles, and markets its database as a tool used by
8  thousands of paying customers "to find information on anyone" to power sales, recruit, and engage
9  in marketing.

10       14.    A CheckThem subscription must be purchased from its website, which allows its
11 paying customers to perform a "background check" on anyone in its database and obtain, *inter*
12 *alia*, any individual's contact information (such as full name, age, address history), e-mail address,
13 employment records, and criminal background information.

14       15.    When a user visits the CheckThem website and searches for an individual by using
15 his or her first and last name, CheckThem displays a landing page of the individuals found within
16 its records that have the same name, alongside certain uniquely identifying information such as
17 each individual's aliases, location, relatives, and age ("Marketing Page"). *See* Figure 1.
18 / / /
19
20 / / /
21
22 / / /



(**Figure 1**)

16. Within the Marketing Page, CheckThem displays an advertisement stating that it "found results" for the searched for individual and that the results are "verified." Upon clicking the link to obtain the results, CheckThem displays another advertisement stating that the "[r]eport [is] almost ready," but that the user must first enter their email address to save the report. *See* Figure 2.

/ / /

/ / /

/ / /



**(Figure 2)**

17.     Once the user enters their email address, CheckThem displays a checkout page advertising a "limited time offer" of $2.99 for 5 days of full access to the database, and then an automatic enrollment in its $34.95 monthly subscription plan. *See* Figure 3.

/ / /

/ / /

/ / /



(**Figure 3**)

18. Once a user enters their payment information, they can access the report on the searched individual. *See* Figure 4.

/ / /

/ / /

/ / /

(**Figure 4**)

19. All of this advertising is intended to sell subscriptions to Defendant's services. Indeed, rather than offering to sell a user just the report for the searched individual, Defendant requires users to purchase the report along with a 5-day trial that grants the purchaser unlimited access to the information on anybody in its database. Thereafter, the purchaser is auto enrolled in CheckThem's monthly subscription service.

20. In this way, Defendant misappropriated people's identities (names and other identifying information such as their location and age) for its own commercial benefit (to market and promote a monthly subscription to access any and all reports in CheckThem's database).

21. Most importantly, Defendant never obtained written consent from Plaintiff and Class members to use their names or other identifying information for any reason, let alone for commercial purposes. Defendant never notified Plaintiff and Class members that their names or other identifying information would appear on their Marketing Page in conjunction with an offer to purchase access to their database of records. Moreover, Plaintiff and the Class members have no relationship with CheckThem whatsoever.

22. Plaintiff, on behalf of herself and other similarly situated Nevada residents, brings this action against Defendant for its ongoing violations of the Nevada Right of Publicity Law, and seeks (1) injunctive relief requiring Defendant to cease using Nevada residents' identities for commercial purposes, including on its Marketing Page, (2) actual damages, not less than $750, per violation to members of the Class, (3) an award of punitive damages or exemplary damages, and (4) an award of costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF JACKSON

23. In 2021, Plaintiff Megan Jackson discovered that Defendant was using her identity to solicit the purchase of paid subscriptions to CheckThem.

24. CheckThem specifically identified Plaintiff by her full name, age, and location on its Marketing Page. *See, e.g.*, Figures 1-4.

25. Plaintiff never provided Defendant with her written consent (or consent of any kind) to use any attribute of her identity for commercial purposes, and certainly never authorized Defendant to use her identity to promote any of its products or services.

26. Plaintiff Megan Jackson is not and has never been a CheckThem customer. She has no relationship with CheckThem whatsoever.

## CLASS ALLEGATIONS

27. **Class Definition:** Plaintiff Megan Jackson brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as follows:

> All Nevada residents (1) whose identities were displayed on the Marketing Page and (2) who have never purchased any products or services on checkthem.com.

28. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

29. **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Class members can be identified through Defendant's records.

30. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether Defendant used Plaintiff's and Class members' names and identities for a commercial purpose;

   b. Whether Plaintiff and Class members provided their written consent to Defendant to use their names and identities in advertisements;

   c. Whether the conduct described herein constitutes a violation of the Nevada Right of Publicity Law; and

   d. Whether Plaintiff and the Class are entitled to injunctive relief.

31. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

32. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

33. **Policies Generally Applicable to the Classes:** This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on

1  Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to
2  Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of
3  Defendant's unlawful and wrongful conduct.

4      34.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Nevada Right of Publicity Law, Nev. Rev. Stat. § 597.770, *et seq*.**
**(On behalf of Plaintiff and the Class)**

35.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

36.    The Nevada Right of Publicity Law prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. *See* Nev. Rev. Stat. § 597.770, *et seq*.

37.    Defendant sells subscription-based access to its database containing detailed reports about people.

38.    As described above, to promote those reports, Defendant used Plaintiff's and the putative class members' identities on its Marketing Page, which displays the individuals found

within its records that match searched-for names, alongside uniquely identifying information such as each individual's aliases, location, relatives, and age. This information serves to identify such individuals to a reasonable audience.

39. The Marketing Page has a commercial purpose in that it promotes the CheckThem website and a paid membership to access reports in its database.

40. Plaintiff and members of the Class never provided Defendant with their written consent to use their full names (or any attribute of their identity) in advertisements for CheckThem. Defendant never notified Plaintiff and Class members that their identities would be used in commercial advertisements.

41. Defendant deprived Plaintiff and Class members of control over whether and how their names and other identifying information can be used for commercial purposes.

42. Based upon Defendant's violation of the Nevada Right of Publicity Law, Plaintiff and Class members are entitled to (1) an injunction requiring Defendant to cease using Plaintiff's and members of the Class's names and any attributes of their identities to advertise their products and services, (2) damages of not less than $750 per violation to each member of the Class, (3) an award of punitive damages or exemplary damages, and (4) an award of costs and reasonable attorneys' fees under Nev. Rev. Stat. § 597.810.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Megan Jackson, individually and on behalf of the Class, prays that the Court enter an Order:

    a. Certifying this case as a class action defined above, appointing Megan Jackson as Class Representative, and appointing her counsel as Class Counsel;

    b. Declaring that Defendant's actions described herein constitute a violation of the Nevada Right of Publicity Law;

      c.    Awarding injunctive and other equitable relief as necessary to protect the interest of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

      d.    Awarding damages of not less than $750 per violation to each member of the Class;

      e.    Awarding punitive and exemplary damages;

      f.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

      g.    Awarding Plaintiff and the Class pre- and post-judgment interest; and

      h.    Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

DATED this 15th day of December, 2021.

Respectfully Submitted,

KEMP JONES, LLP

By: /s/ Don Springmeyer
Don Springmeyer, Esq. (Nevada Bar #1021)
Michael J. Gayan, Esq. (Nevada Bar #11135)
Madison Zornes-Vela, Esq. (Nevada Bar #13626)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

Philip L. Fraietta *(Pro hac vice forthcoming)*
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019

Ari J. Scharg *(Pro hac vice forthcoming)*
Benjamin Thomassen *(Pro hac vice forthcoming)*
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654

*Attorneys for Plaintiff and the Class*