1  BRIAN K. WALTERS
   Nevada Bar No. 9711
2  GORDON REES SCULLY MANSUKHANI, LLP
   300 So. 4th Street, Suite 1550
3  Las Vegas, Nevada 89101
   Telephone: (702) 577-9300
4  Facsimile:  (702) 255-2858

5  *Attorneys Defendant CHECK THEM, INC.*

6

7                    UNITED STATES DISTRICT COURT

8                         DISTRICT OF NEVADA

9

10 MEGAN JACKSON, individually and on behalf of   )   CASE NO.  2:21-cv-02201-APG-DJA
   all others similarly situated,                 )
11                                                 )   **NOTICE OF DEFENDANT'S**
                                                   )   **MOTION AND MOTION TO**
12                    Plaintiff,                   )   **DISMISS PURSUANT TO FRCP 12**
                                                   )   **AND MOTION TO STRIKE**
13       v.                                        )   **PURSUANT TO NEVADA REV.**
                                                   )   **CODE §  41.635** *et seq.,* **AND**
14 CHECK THEM, INC., a Wyoming Corporation,        )   **MEMORANDUM IN SUPPORT**
                                                   )
15                    Defendant.                   )
   _____       )
16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND FACTS AND PLAINTIFF'S MATERIAL ALLEGATIONS .........................2

ARGUMENT ..........................................................................................................3

    I.     The Court Lacks Personal Jurisdiction over Check Them....................3

          A.    Plaintiff has not shown that Defendant purposefully directed its activities toward the forum state....................4

          B.    Plaintiff's claim does not arise from or relate to forum-related activities. ...................5

    II.    Plaintiff's Claims Fail Because Plaintiff Did Not Suffer Any Injury As A Result of the Alleged Violations....................7

    III.   The Communications Decency Act Bars Plaintiff's Claim. ...................9

    IV.   Plaintiff Has Failed to State a Claim Under the Nevada Right of Publicity Law. ...................12

          A.    Plaintiff fails to plead that the alleged commercial use occurred within the State of Nevada. ...................12

          B.    Plaintiff fails to plead a public use of holding out of her name or identity. ...................13

          C.    Plaintiff's NRPL claim fails because the challenged conduct is excepted from the statute. ...................14

               i.    The use is "not directly connected" with any commercial sponsorship. ...................14

               ii.   The use is in connection with "public affairs."............................16

               iii.  The use is an attempt to portray Plaintiff in a book or visual program. ...................17

    V.    Plaintiff's Claim Is Barred By The First Amendment. ...................19

    VI.   Plaintiff's Liability Theory Violates The Dormant Commerce Clause. ...................21

CONCLUSION....................................................................................................23

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**300 S. 4th Street, Suite 1550**
**Las Vegas, Nevada 89101**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldrin v. Topps Co., Inc.*,
  No. 10-09939, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ................................. 18

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) .................................... 18

*Am. Beverage Ass'n v. Snyder*,
  735 F.3d 362 (6th Cir. 2013) ..................................... 22

*Am. Booksellers Found. v. Dean*,
  342 F.3d 96 (2d Cir. 2003) ........................................ 22

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
  11 F.4th 972 (9th Cir. 2021) ...................................... 4

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................. 9, 10

*Boschetto v. Hansing*,
  539 F.3d 1101 (9th Cir. 2008) ................................... 3

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  137 S. Ct. 1773 (2017) ........................................ 4, 5

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174 (1985) ........................... 6

*Callahan v. Ancestry.com*,
  No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ................. 10

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ................................... 9

*Carlisle v. Fawcett Publ'ns, Inc.*,
  201 Cal. App. 2d 733 (1962) .................................... 16

*Cher v. Forum Intern. Ltd*,
  692 F.2d 634 (9th Cir. 1982) ................................... 15

*Christoff v. Nestlé USA, Inc.*,
  47 Cal. 4th 468 (2009) ......................................... 13

*Coker v. Sassone*,
  135 Nev. 8, 14, 432 P.2d 746 (2019) ........................... 13

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) ................................... 21

*Cox Broad. Corp. v. Cohn*,
   420 U.S. 469 (1975) ............................................................................................. 19, 21

*Crowe v. Wiltel Communications Systems*,
   103 F.3d 897 (9th Cir. 1996) ...................................................................................... 13

*Dennis v. MyLife.com*,
   No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 21, 2021) ............................................ 10, 11

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ...................................................................................... 19

*Ditech Fin. LLC v. Buckles*,
   133 Nev. 493, 496, 401 P.3d 215 (2017) ....................................................................... 13

*Dobrowolski v. Intelius, Inc.*,
   No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ...................................... 15

*Edberg v. Neogen Corp.*,
   17 F. Supp. 2d 104 (D.Conn.1998) ............................................................................... 6

*Esch v. Universal Pictures Co.*,
   No. 09-cv-02258, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) ...................................... 21

*Fraley v. Facebook*,
   830 F.Supp. 2d 785 (N.D. Cal. 2011) ............................................................................ 17

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) .................................................................................................... 7

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ......................................................................... 9

*Gonzalez v. Google, Inc.*,
   No. 18-16700, 2021 WL 2546675 (9th Cir. June 22, 2021) ............................................ 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .................................................................................................... 5

*Graco Minnesota Inc. v. PF Brands, Inc.*,
   18-cv-1690-WQH-AGS, 2019 WL 1746580 (S.D. Cal. Apr. 17, 2019) ............................ 5

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995) ........................................................................................ 21

*Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*,
   424 F. Supp. 267 (E.D. Va. 1976) ................................................................................ 19

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989) .................................................................................................... 21

*Henderson v. Source for Pub. Data*,
   No. 3:20-CV-294-HEH, 2021 WL 2003550 (E.D. Va. May 19, 2021) ............................. 10

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

*IMDb.com Inc. v. Becerra,*
   962 F.3d 1111 (9th Cir. 2020) ........................................................................ 20

*In re Google, Inc. Privacy Policy Litig.,*
   No. 12-01382, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .......................... 9

*ISI Brands, Inc. v. KCC Int'l, Inc.,*
   458 F. Supp. 2d 81 (E.D.N.Y. 2006) ................................................................ 6

*Jackson v. Robinhood Markets, Inc.,*
   No. 21-CV-02304-LB, 2021 WL 2435307 (N.D. Cal. June 15, 2021) ........... 14

*Johnson v. Carmouche,*
   No. 2:15-cv-00597, 2015 WL 6757537 (D. Nev. Nov. 4, 2015) ...................... 3

*Jones v. Golden Spike Corp.,*
   97 Nev. 24, 26, 623 P.2d 970 (1981) ............................................................. 13

*K and K Productions v. Walt Disney Studios Motion Pictures,*
   2:20-cv-1753, 2021 WL 4394787 (D. Nev. Sept. 9, 2021) ........................... 18

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984) ......................................................................................... 5

*Leidholdt v. L.F.P. Inc.,*
   860 F.2d 890 (9th Cir. 1988) ......................................................................... 16

*Liberi v. Taitz,*
   No. SACV 11-0485 AGAJWX, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011) ........... 10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................... 7, 8

*Millennium Enterprises, Inc. v. Millennium Music, LP,*
   33 F. Supp. 2d 907 (D. Or. 1999) ................................................................... 6

*Montana v. San Jose Mercury News, Inc.*
   34 Cal. App. 4th 790 (1995) .......................................................................... 16

*Montana v. San Jose Mercury News, Inc.,*
   34 Cal. App. 4th 790 (Ct. App. 1995) ............................................................ 21

*Morrill v. Scott Financ'l Corp.,*
   873 F.3d 1136 (9th Cir. 2017) ...................................................................... 6, 7

*Namath v. Sports Illustrated,*
   48 A.D.2d 487, 490, 371 N.Y.S.2d 10 (1975),
   *aff'd,* 39 N.Y.2d 897, 352 N.E.2d 584 (1976) ......................................... 16, 21

*Obado v. Magedson,*
   Civ. No. 13-2382, 2014 WL 3778261, (D.N.J. July 31, 2014) aff'd, 612 F. App'x 90, 93–94
   (3d Cir. 2015) ............................................................................................ 11, 14

*Ona v. U.S. Army Corps of Eng'rs,*
   440 F.3d 1122 (9th Cir. 2006) ....................................................................... 18

Gordon Rees Scully Mansukhani, LLP
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

-v-

*Ostergren v. Cuccinelli*,
  615 F.3d 263 (4th Cir. 2010) .............................................................................. 19, 20

*Page v. Something Weird Video*,
  960 F. Supp. 1438 (C.D. Cal. 1996) ........................................................................ 21

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970) ................................................................................................. 22

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017) ............................................................... 20, 22

*Regent Lighting Corp. v. Am. Lighting Concept, Inc.*,
  25 F. Supp. 2d 705 (M.D.N.C. 1997) ........................................................................ 6

*Reno v. ACLU*,
  521 U.S. 844 (1997) ................................................................................................. 17

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ..................................................................................... 4

*Seaver v. Estate of Cazes*,
  No. 2:18-cv-712, 2019 WL 2176316 (D. Utah May 20, 2019) ................................... 9

*Sessa v. Ancestry.com Operations*,
  2021 WL 4245359 (D. Nev. Sept. 16, 2021) .......................................................... 7, 8

*Shaffer v. Heitner*,
  433 U.S. 186 (1977) ................................................................................................... 5

*Sheehan v. Gregoire*,
  272 F. Supp. 2d 1135 (W.D. Wash. 2003) ............................................................... 20

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ....................................................................................... 16, 17

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011) ........................................................................................... 17, 19

*Spy Optic, Inc., v. AreaTrend*,
  No. 20-55438, 2021 WL 225628 (9th Cir. Jan. 22, 2021) .......................................... 4

*TransUnion LLC v. Ramirez*,
  ─── U.S. ───, 141 S. Ct. 2190 (2021) .................................................................. 7, 8

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) ..................................................................... 19

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ....................................................................................... 5, 6, 7

*White v. City of Sparks*,
  341 F. Supp. 2d 1129, (D. Nev. 2004),
  *aff'd*, 500 F.3d 953 (9th Cir. 2007) ........................................................................ 16

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*William O'Neil & Co. v. Validea.com Inc.*,
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) .......................................................... 17, 21

**Statutes**

47 United States Code
    Section 230 ................................................................................. 9, 10, 11, 15, 23

Nevada Revised Code
    Section 41.670 ............................................................................................... 23

Nevada Revised Code
    Section 597.770 ............................................................................................. 12

Nevada Revised Code
    Section 597.780 ........................................................................................ 12, 13

Nevada Revised Code
    Section 597.790 ................................................................... 12, 14, 16, 17, 23

Nevada Revised Statutes
    Section 14.065 ................................................................................................. 3

Nevada Revised Statutes
    Section 41.635 ................................................................................................. 1

**Rules**

Federal Rule of Civil Procedure
    Rule 12 ........................................................................................................ 1, 3

**Regulations**

Restatement (Second) of Torts § 652A (1977) ....................................................... 13

Restatement (Third) of Unfair Competition § 47 ................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
**300 S. 4ᵗʰ Street, Suite 1550**
**Las Vegas, Nevada 89101**

1   PLEASE TAKE NOTICE that defendant Check Them, Inc. ("Check Them"), by and

2   through its attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2) and (b)(6)

3   will and hereby does move the Court to dismiss with prejudice Plaintiff's Complaint in its

4   entirety and to strike the Complaint pursuant to Nevada's anti-SLAPP statute. NRS § 41.635.

5   Check Them moves to dismiss on the grounds that the Court does not have personal

6   jurisdiction over Check Them, Plaintiff lacks Article III standing, and the Complaint fails to state

7   a claim upon which relief can be granted. Plaintiff's claim is further foreclosed by Section 230 of

8   the Communications Decency Act ("CDA") and the First Amendment. Check Them also moves

9   to strike Plaintiff's Complaint pursuant to Nevada's anti-SLAPP statute on the grounds that

10  Plaintiff's suit arises from protected activity and Plaintiff cannot demonstrate a probability of

11  prevailing on the merits.

12  This motion is based upon this Notice and accompanying memorandum of law, the

13  attached declaration, the pleadings and records on file, and on such other and further argument

14  and evidence as may be presented at the time of hearing, and all matters of which this Court may

15  take judicial notice.

16  **INTRODUCTION**

17  Check Them operates a website that provides public record information to help people

18  locate and learn more about others in their lives. It is an online encyclopedia about and directory

19  of people. A user who visits CheckThem.com can conduct a free search for a person, can then

20  see if Check Them has public record information about that person, and can then purchase and

21  receive a short background report about that person. In this lawsuit, Plaintiff alleges that Check

22  Them has violated the Nevada Right of Publicity Law ("NRPL") because, after someone

23  searched her name for free on Check Them's website, her name and other identifying

24  information appeared.

25  Plaintiff's case is fundamentally at odds with how internet databases, both free and paid,

26  operate to return results in response to a user's query. Plaintiff appears to be trying to follow a

27  legal theory that is at odds with the plain language of the NRPL, as well as the First Amendment,

28  and Section 230 of the Communications Decency Act. Applying this well-settled authority,

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Plaintiff has failed to state a claim as a matter of law. As threshold matters though, this Court lacks personal jurisdiction over Check Them and subject matter jurisdiction over Plaintiff's claim. Plaintiff's lawsuit must also be dismissed because Plaintiff's counsel appears to have manufactured Check Them's alleged contacts with the forum state and, as such, this Court lacks personal jurisdiction over Check Them. Further, Plaintiff has failed to sufficiently allege that she has suffered actual injury, rendering her without standing under Article III to bring her claim. Both jurisdictional shortcomings require dismissal of Plaintiff's Complaint.

## BACKGROUND FACTS AND PLAINTIFF'S MATERIAL ALLEGATIONS

Check Them operates www.CheckThem.com. Like an online bookstore selling biographies about people, the site contains a search function, allowing users to "perform a free search for an individual—by typing the individual's first and last name into the search bar." Complaint ¶ 2. In response to the user's search, "Check Them displays a preview page featuring the searched individual's full name alongside certain uniquely identifying information, including aliases, location, relatives, and age.' *Id*. The search function allows users to determine whether Check Them can provide additional public record information about the search subject, *i.e.* a background report.

Plaintiff alleges that the search results displayed in response to a user's search for someone violates NRPL. *Id*. ¶ 4. Once a user performs a search and sees search results, the user can click a link titled "Open Report." *Id*. ¶ 15, Figure 1. Once the user clicks the "Open Report" link, Check Them informs the user that the "[r]eport [is] almost ready," and allows the user to "enter their email address to save the report". *Id*. ¶ 16. Check Them then displays a "checkout page with offers to purchase "unlimited background reports" including the background report for the person searched. *Id*. ¶ 17, Figure 3. Plaintiff Megan Jackson alleges that, in 2021, she "discovered that [Check Them] was using her identity to solicit the purchase of paid subscriptions." *Id*. ¶ 23.

In support of its argument for personal jurisdiction, Plaintiff's Complaint alleges that Defendant "transacts business in this District, misappropriates the identities of people that it knows reside in this District, and the unlawful conduct alleged in the Complaint occurred in this

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

District." Compl. ¶ 8. However, Check Them is a Wyoming corporation with its principal place of business in California, and it has no physical or other presence in Nevada. Declaration of Ernesto Vargas-Azofeifa, Ex. A, ¶¶ 3, 4. Check Them does not direct any marketing or advertising specifically at Nevada or its residents. *Id*. ¶ 5. Check Them is not the author or provider of the public record information contained on its website, rather it obtains such information from third-party data providers, which are not located in the State of Nevada. *Id*. ¶ 6. Further, Check Them does not "scrape" or otherwise access databases in Nevada. *Id*. ¶ 7.

It appears that Plaintiff's counsel's own search of Plaintiff's name is the purported basis for Check Them's contacts with Nevada. *Id.* ¶¶ 8-10. The only instance of a user searching the name "Megan Jackson" on the Check Them site occurred on October 20, 2021. *Id*. ¶ 8. Check Them conducted an investigation and determined that the IP address associated with this singular search of the Plaintiff's name is located on a server in New York, New York belonging to Bursor & Fisher, PA, Plaintiff's counsel. *Id*. ¶ 10.[1] Bursor & Fisher, PA, appearing in this Court with local counsel, does not have an office in Nevada.

## **ARGUMENT**

### **I. The Court Lacks Personal Jurisdiction over Check Them.**

Plaintiff cannot establish that Check Them has sufficient "minimum contacts" with Nevada to warrant personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Nevada exercises personal jurisdiction coextensive with federal due process standards. NRS § 14.065. "[A] plaintiff bears the burden of demonstrating that his or her allegations would establish a prima facie case for personal jurisdiction." *Johnson v. Carmouche*, No. 2:15-cv-00597, 2015 WL 6757537, at *1 (D. Nev. Nov. 4, 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1101, 1115 (9th Cir. 2008)).

The crux of Plaintiff's claim is that Plaintiff's name and other identifying information

---

[1] Also on October 20, 2021 a user from the same IP address searched "Loretta Bensen," "Shontonna Harris," and "Teresa Hutchens." Ex. A. ¶ 7. On December 6, 2021, a user from the same IP address searched "Rhonda Cotta." *Id*. Since those searches, Bursor & Fisher, PA has represented people by those names in similar lawsuits across the country. *Id*.

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

appeared in response to a search on Check Them's website. Putting aside whether this could state an NRPL claim, a fundamental flaw with Plaintiff's claim is that the search on Check Them's website appears to have been performed by Plaintiff's counsel, himself a non-resident, while located in the state of New York. Thus, this is not a case where a non-resident defendant reached into a forum state to injure a plaintiff; rather, Plaintiff's counsel, on behalf of Plaintiff, reached out to a non-resident Defendant in an attempt to manufacture a claim.

There is no specific personal jurisdiction unless (1) Check Them "purposefully directed its conduct into the forum State"; and (2) Plaintiff's claim "arise[s] out of or relate[s] to" Check Them's "forum conduct." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004). Neither element exists here.

**A.      Plaintiff has not shown that Defendant purposefully directed its activities toward the forum state.**

A plaintiff must show the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803. "The test is all or nothing' if a plaintiff cannot establish even one of the three prongs, specific jurisdiction cannot attach." *Spy Optic, Inc., v. AreaTrend*, No. 20-55438, 2021 WL 225628, at *3 (9th Cir. Jan. 22, 2021).

Plaintiff cannot point to an intentional act Check Them "aimed at the forum state." Plaintiff's threadbare jurisdictional allegations merely recite jurisdictional requirements. Plaintiff alleges that Check Them "transacts business in this District, misappropriates the identities of people that it knows reside in this District, and the unlawful conduct alleged in the Complaint occurred in this District." Compl. ¶ 8. Yet, none of these alleged acts, which arise from Check Them's operation of a public website, can fairly be characterized as "aimed at the forum state." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) ("Express aiming requires more than the defendant's awareness that the plaintiff alleged to have harmed resides in or has strong ties to the forum"); *Spy Optic*, 2021 WL 225628, at *2 ("Operating a universally accessible website alone cannot satisfy the express aiming prong."); *Graco Minnesota Inc. v. PF*

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

*Brands, Inc.*, 18-cv-1690-WQH-AGS, 2019 WL 1746580, at *4 (S.D. Cal. Apr. 17, 2019) ("[d]istrict courts have declined to find express aiming based on alleged sales of products that infringe intellectual property rights through commercial, interactive websites accessible to California consumers" when such sales comprise a small portion of a defendant's business) (collecting cases).

Here, Plaintiff has failed to allege and cannot establish that Check Them has targeted the forum state.

**B.**      **Plaintiff's claim does not arise from or relate to forum-related activities.**

Even if Plaintiff did allege and could establish that Check Them has targeted the forum, she has not alleged and cannot establish that her claim arises from any forum-related activities. None of the conduct complained of in the Complaint took place in Nevada. The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way"); For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Walden*, 134 S. Ct. at 1125. There must be a "connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017). "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011).

Here, Check Them has no presence in and directed no conduct into Nevada. To the contrary, Plaintiff, through her counsel, has reached out from a non-forum state to initiate contacts with Check Them in an attempt to create Plaintiff's claim. This is confirmed by Plaintiff's Complaint and Check Them's investigation of Plaintiff's counsel's actions. As she stated in her Complaint, "Megan Jackson is not and has never been a Check Them customer. She

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1   has no relationship with Check Them whatsoever." Compl. ¶ 26.

2          The user who visited Check Them's website and searched Plaintiff's name October 20,

3   2021 also searched for "Loretta Bensen," "Sherry Gaul," "Shontonna Harris," "Teresa

4   Hutchens," and "Rhonda Cotta." Ex A. ¶ 7. These are the names of plaintiffs represented by

5   Plaintiff's counsel in nearly identical lawsuits. *Id.* Thus, Plaintiff's claim and theory of specific

6   jurisdiction is founded not on any purposeful conduct by Check Them with Nevada, but on

7   Plaintiff's counsel's purposeful conduct directed at a non-resident defendant. This does not

8   establish specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.

9   Ct. 2174, 2183–84 (1985) (jurisdiction is proper where the contacts proximately result from

10  actions "by the defendant *himself*") (emphasis in original)*; see also ISI Brands, Inc. v. KCC Int'l,*

11  *Inc.*, 458 F. Supp. 2d 81, 88-89 (E.D.N.Y. 2006) ("It is beyond dispute that jurisdiction cannot be

12  manufactured by the plaintiff."); *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F.

13  Supp. 2d 907, 911 (D. Or. 1999) ("'Only those contacts with the forum that were created by the

14  defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be

15  considered for due process purposes.'") (quoting *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104,

16  112 (D.Conn.1998)); *Regent Lighting Corp. v. Am. Lighting Concept, Inc.*, 25 F. Supp. 2d 705,

17  712 n.5 (M.D.N.C. 1997) ("[T]he court will disregard [plaintiff's] attempt to manufacture

18  jurisdiction when assessing whether Defendants had sufficient contacts with the forum to support

19  the exercise of personal jurisdiction.").

20         Plaintiff alleges Check Them hosted the information about Plaintiff on its universally-

21  accessible website. Compl. ¶ 13. But the only person who viewed the information was Plaintiff's

22  counsel in a non-forum state. Ex. A. Plaintiff alleges she is a citizen of the State of Nevada.

23  Compl. ¶ 5. But this does not suffice to confer jurisdiction. *See Walden*, 134 S. Ct. at 1125.

24  Where the sole connection to the forum state is that the plaintiff resides there, then personal

25  jurisdiction cannot be found. *See Morrill v. Scott Financ'l Corp.*, 873 F.3d 1136, 1145 (9th Cir.

26  2017) (citing *Walden*). Further, it is improper to attribute a plaintiff's forum connections to the

27  defendant and make those connections decisive in the jurisdictional analysis. *Id.* Allowing

28  Plaintiff's connection to the forum state, her citizenship, to drive the jurisdictional analysis is

precisely what *Walden* and *Morrill* caution against. Because Plaintiff has failed to make any further material allegations regarding Check Them's connections to the forum state, the lack of personal jurisdiction is clear.

Because Check Them lacks sufficient contacts with Nevada and because Plaintiff's counsel's interaction with Check Them does not establish personal jurisdiction in Nevada, the case should be dismissed.

## II.   Plaintiff's Claims Fail Because Plaintiff Did Not Suffer Any Injury As A Result of the Alleged Violations.

To establish standing under the U.S. Constitution, a plaintiff bears the burden of proving an "injury in fact" that is causally linked to the conduct complained of and would be redressed by a decision in plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (plaintiff bears the burden to establish that subject matter jurisdiction exists).

This district court has recognized that where a plaintiff's information may be available through a service, but has not yet been published to any third party then the plaintiff lacks Article III standing. Specifically, in *Sessa v. Ancestry.com Operations*, 2021 WL 4245359 (D. Nev. Sept. 16, 2021), the Court pointed to the Supreme Court's decision in *TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S. Ct. 2190 (2021) to illustrate this point. In *TransUnion*, plaintiffs brought suit under the Fair Credit Reporting Act, alleging that they had been "mistakenly noted . . . as 'potential match[es]' with names on the list of terrorists, drug traffickers, and other serious criminals" maintained by the U.S. government. *Id.* at 4 (citing *TransUnion*). Out of a total potential class of 8,185 consumers, only 1,853 consumers had their "offending credit report published to third parties." *Id.* "The Supreme Court concluded that only those whose reports were published suffered concrete injury capable of providing standing." *Id.* Those consumers whose credit reports were never actually published to third parties "did not suffer actual harm" and any harm they did suffer was "neither concrete nor traditionally compensable." *Id.* at *5. Such is the case here.

Plaintiff's information was available on Check Them's website, but it was only ever

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

accessed by Plaintiff's counsel on Plaintiff's behalf. Ex. A ¶¶ 6-8. As Plaintiff's information was never actually published to a third party, she did not suffer any actual harm. Therefore, she lacks the type of injury that would confer Article III standing over her claim.

In *Sessa*, where the district court did find standing, it pointed to allegations that Ancestry.com "used Plaintiffs' names, images, and likenesses in targeted email advertising to Plaintiffs' relatives to advertise Ancestry's subscription services" and that Ancestry.com users had "accessed Plaintiffs' profiles, and . . . were presented with a pop-up advertisement bearing Plaintiffs' names and images that encouraged them to "Sign Up Now" for a paid subscription." *Sessa*, 2021 WL 4245359 at *5. These are precisely the types of specific allegations of harm that are missing from this Plaintiff's Complaint. Plaintiff makes no allegations regarding such targeted advertising. Plaintiff does not allege that her information was viewed by any third party. Plaintiff cannot make allegations like those required in *Sessa* and *TransUnion* because her information was only ever viewed by her counsel.

Even if Plaintiff could plausibly allege a concrete injury (she cannot), there is no plausible link between any such injury and the challenged conduct, and it is equally unlikely redress would result from a favorable decision. *See Lujan*, 504 U.S. at 560-61; *Sessa*, 2021 WL 4245359 at *5 (this type of prospective harm is not "traditionally compensable").  Stating the obvious, the public information Plaintiff complains about is available through a variety of sources such as phone books, property records, court records, and directories.. Accordingly, to the extent Plaintiff could allege any "loss" to the value of her name or identity, such "loss" would have arisen from the original publication and distribution of her identity as a public record, in which Check Them played no role. In other words, to the extent that Plaintiff's information identified in the Complaint was published to third parties, such publication was not authored by Check Them. For this exact reason, any purported "injury" would not be redressed by a favorable decision in this Court as any decision in Plaintiff's favor would do nothing to address the widespread availability of these public records through third-party and government sources. *See Lujan*, 504 U.S. at 562-570 (finding no redressability where court's decision "would not have remedied respondents' alleged injury anyway, because it would not have been binding"

Gordon Rees Scully Mansukhani, LLP
300 S. 4ᵗʰ Street, Suite 1550
Las Vegas, Nevada 89101

1    on those who were "not parties").

2          Finally, Plaintiff cannot save her insufficient allegations by contending that Check Them

3    obtained a benefit from the use of her information. A defendant's alleged gain does not mean

4    that a plaintiff was injured. *See e.g. In re Google, Inc. Privacy Policy Litig.*, No. 12-01382, 2013

5    WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[P]laintiff must do more than point to the dollars

6    in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his

7    own."). Plaintiff also does not and cannot allege that Plaintiff's counsel or anyone else ever

8    purchased a Check Them report about Plaintiff.

9          Because Plaintiff's claims allege neither actual injury nor redressability, Plaintiff lacks

10   Article III standing and claim should be dismissed.

11   **III.    The Communications Decency Act Bars Plaintiff's Claim.**

12         Plaintiff's NRPL claim is also barred by Communications Decency Act ("CDA") Section

13   230 immunity. Section 230 of the CDA states that "[n]o provider or user or an interactive

14   computer service shall be treated as the publisher or speaker of any information provided by

15   another information content provider." 47 U.S.C. § 230(c)(1). "The CDA has been interpreted to

16   provide a 'robust' immunity for internet service providers and websites, with courts 'adopting a

17   relatively expansive definition of' interactive computer service' and a relatively restrictive

18   definition of 'information content provider.'" *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193,

19   1196 (N.D. Cal. 2009) (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th

20   Cir. 2003)).

21         This immunity encompasses the state-law claim Plaintiff asserts here. *See Barnes v.

22   Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009) ("'[n]o cause of action may be brought and

23   no liability may be imposed under any State or local law that is inconsistent with this section.'"

24   quoting CDA subsection 230(e)(3); *see also Seaver v. Estate of Cazes*, No. 2:18-cv-712, 2019

25   WL 2176316, at *3 (D. Utah May 20, 2019) ("[T]he CDA 'creates a federal immunity to any

26   state law cause of action that would hold computer service providers liable for information

27   originating with a third party.'") (citation omitted).

28         As such, a defendant must establish the following to obtain Section 230 immunity: (1) it

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

is a provider or user of an interactive computer service; (2) the asserted claims treat the defendant as a publisher or speaker of information; and (3) the challenged information has been provided by another information content provider. *Barnes*, 570 F.3d at 1100-01. Courts have consistently held that Section 230 bars liability against interactive computer services, like Check Them, that provide encyclopedic and directory-style information about people. This includes very recent cases about sites providing similar or identical services to those provided by Check Them, including sites like Ancestry.com, Publicdata.com, Intelius.com, and MyLife.com. This growing body of law acknowledges that these people information sites are mere conduits for public information gathered from public third-party sources.

In *Callahan v. Ancestry.com*, No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021), plaintiffs alleged that Ancestry's display of information about them, which had been sourced from yearbook records, violated California's right of publicity law. The court dismissed plaintiffs' claim holding that, "because [Ancestry] did not create content or contribute materially to the content," Ancestry was immune from liability under the CDA. *Id.* at *5.

In *Henderson v. Source for Pub. Data*, No. 3:20-CV-294-HEH, 2021 WL 2003550, at *1 (E.D. Va. May 19, 2021), plaintiffs alleged that publicdata.com's display of inaccurate information about them, sourced from government records, violated the Fair Credit Reporting Act. Dismissing plaintiffs' claim, the court held that defendants were entitled to CDA immunity because "[p]laintiffs admit ... that the convictions and other information included on [d]efendants reports are derived from other information content providers such as courts and other repositories of this information." *Id.* at *6; *see also Liberi v. Taitz*, No. SACV 11-0485 AGAJWX, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011) (stating that Intelius is not an information content provider and is entitled to CDA immunity because it obtains information from other sources including "State and Federal government agencies" and "provide[s] a service that allows internet users to access third-party content.").

In *Dennis v. MyLife.com*, No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 21, 2021), the court reached the same conclusion. There, plaintiffs alleged that MyLife violated state right of publicity laws by publishing electronic background reports about them. *Id.* at *1.   The court

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1   dismissed plaintiffs' claims based on CDA immunity holding that MyLife is an interactive

2   computer service because it "enables consumers to access and search through various databases

3   on its website" and "Plaintiffs seek to hold [MyLife] liable for information created by third

4   parties." *Id.* at *7.

5       The elements for CDA immunity are fully satisfied here. First, Check Them is an

6   "interactive computer service" under Section 230 because, as alleged by Plaintiff, it owns and

7   operates a public website. Compl. ¶ 13. Second, since Plaintiff's claim is based on Check

8   Them's display of information about her, the claim treats Check Them as a "publisher." *Id.* ¶ 15

9   ("Check Them displays a landing page of individuals found within its records that have the same

10  name [as the search subject], alongside certain uniquely identifying information such as each

11  individual's aliases, location, relatives, and age"). Third, Check Them is a publisher of

12  information provided by a third-party. Plaintiff's Complaint correctly describes that Check Them

13  displays records it has compiled from "public records and social media profiles." *Id.* ¶ 13.

14      Finally, websites that operate by allowing "user's voluntary actions" in choosing search

15  terms to enable the website to then send desired "third-party content to [the]user[]" have full

16  CDA immunity. *Gonzalez v. Google, Inc.*, No. 18-16700, 2021 WL 2546675 (9th Cir. June 22,

17  2021); *see also Obado v. Magedson*, Civ. No. 13-2382, 2014 WL 3778261, at *7 (D.N.J. July 31,

18  2014) aff'd, 612 F. App'x 90, 93–94 (3d Cir. 2015) (citation omitted) ("Plaintiff's allegations

19  that certain search terms or images appear in response to a user-generated search for 'Dennis

20  Obado' into a search engine fails to establish any sort of liability for Defendants. These results

21  are simply derived from third-party websites, based on information provided by an 'information

22  content provider.). In this instance, Check Them's site is actually parroting back to the user the

23  same name "Megan Jackson" that the user entered as a search query into CheckThem.com,

24  effectively making Plaintiff's counsel the "information content provider." This "voluntary

25  action" in choosing search terms is exactly the type of activity that creates immunity under

26  Section 230.

27      Because Check Them merely published third-party content, it is immune from Plaintiff's

28  claim pursuant to CDA Section 230.

**Gordon Rees Scully Mansukhani, LLP**
**300 S. 4th Street, Suite 1550**
**Las Vegas, Nevada 89101**

**IV.     Plaintiff Has Failed to State a Claim Under the Nevada Right of Publicity Law.**

For each of several reasons, Plaintiff has failed to state a NRPL claim.  For this claim, a plaintiff must demonstrate "commercial use" of their "name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." NRS § 597.770. A plaintiff must also demonstrate that the commercial use at issue occurred "within" Nevada.  NRS § 597.780.  A plaintiff must further demonstrate that the commercial use was prohibited and thus not permitted under NRS § 597.790(2).  In relevant part, the statute provides:

> 2.     Any commercial use by another of the name, voice, signature, photograph or likeness of a person requires the written consent of that person or his or her successor in interest unless:
>
> (a)  The use is contained in material which is commercially sponsored but the use is not directly connected with the commercial sponsorship; …
>
> (c)  The use is in connection with a news [or] public affairs … publication;
>
> (d)  The use is an attempt to portray … a person in a book, magazine article, newspaper article, … or other … visual program, except where the use is directly connected with commercial sponsorship; … [or]
>
> (f)  The use is in connection with an advertisement or commercial announcement for a use permitted by this subsection.

NRS § 597.790(2). Here, applying NRS § 597.780, Plaintiff cannot demonstrate any commercial use of her name within Nevada. Applying NRS § 597.790(2), Plaintiff also cannot demonstrate any commercial use of her name at all, since the only publication was to Plaintiff's counsel. Further, even assuming that Plaintiff did not give written consent to her counsel to search and thus cause the display of her name on Check Them's website, Plaintiff's claim fails pursuant to NRS § 597.790(2)(a), (c), (d) and (f).

**A.     Plaintiff fails to plead that the alleged commercial use occurred within the State of Nevada.**

By its express language, NRPL's scope is limited to commercial uses of a person's

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

likeness "within this state."   NRS §597.780.[2] Here, Plaintiff has made no allegation that the offending content was used in Nevada. Plaintiff's Complaint makes no allegation that information was accessed or published to a third party in Nevada. The only connection to Nevada is that Plaintiff allegedly resides in Nevada. Yet, this factual allegation standing alone does not bring Plaintiff's claim within the scope of NRPL, which is limited to conduct occurring within Nevada. For this very simple reason, Plaintiff has failed to state a claim.

**B.        Plaintiff fails to plead a public use of holding out of her name or identity.**

By its nature "commercial use" requires an allegation that Check Them actually disseminated Plaintiff's name or identity to the public. Thus, a self-generated, nonpublic "use" of a person's identity is not actionable. *See* Restatement (Second) of Torts § 652A (1977) (requiring that privacy torts be published to third parties); *Christoff v. Nestlé USA, Inc.*, 47 Cal. 4th 468, 476 (2009) (right of publicity claim only accrues upon "publication" of plaintiff's identity, as the "tort [is] founded upon . . . publication or exhibition or utterance."); *see also Crowe v. Wiltel Communications Systems*, 103 F.3d 897, 899 (9th Cir. 1996) (an alleged defamatory statement is not actionable unless it has been published, which is "defined as 'the communication . . . to a third person or persons.'") (quoting *Jones v. Golden Spike Corp.*, 97 Nev. 24, 26, 623 P.2d 970, 971 (1981)).[3]

Yet Plaintiff only alleges that she herself "discovered that Defendant was using her

---

[2] Even where a statute does not have an express territorial scope like NRPL does, Nevada's Supreme Court has declined to enforce its laws outside its borders. *See Ditech Fin. LLC v. Buckles,* 133 Nev. 493, 496, 401 P.3d 215, 217 (2017) (Nevada law did not apply to the recording of interstate phone calls when the act of recording occurred outside of Nevada.)

[3] Because there is scant case law interpreting NRPL, Nevada courts routinely look to California's interpretations of their similar state law. *See Coker v. Sassone*, 135 Nev. 8, 14, 432 P.2d 746, 751 (2019) ("[f]ollowing California's lead" where statutes were similar, and both were motivated by First Amendment considerations); *Sessa,* 2021 WL 4245359, at *11 ("Nevada courts look to California law where Nevada law is silent.").

identity" on CheckThem.com. Compl. ¶ 23. Plaintiff does not allege that anyone, besides Plaintiff and her counsel, ever viewed her name and public record information on Check Them's site. This missing allegation is vital. Like disclosing a person's private fact to that same person or speaking a defamatory statement to the subject of the statement, there is no risk of a misleading endorsement by displaying a person's identity to that same person, or their counsel, because they know there has been no endorsement. Because Plaintiff cannot allege any public "use" of her name, she has failed to state a claim.

**C.**      **Plaintiff's NRPL claim fails because the challenged conduct is excepted from the statute.**

Plaintiff has characterized Check Them's free search results as advertising for Check Them. *See* Compl. ¶ 2 ("To market its service, CheckThem encourages prospective customers to perform a free people search on its website"). Although Check Them does not concede this was advertising, NRS § 597.790(2)(f) expressly protects advertising that uses a person's name to promote something that likewise uses a person's name and is permitted by the other exceptions in NRS § 597.790(2). As such, even if Check Them's free search results are advertising, this is protected by NRS § 597.790(2)(a), (c), (d) and (f).

i.      The use is "not directly connected" with any commercial sponsorship.

Plaintiff cannot state a NRPL claim because NRS § 597.790(2)(a) bars her claim. Even where use of a name "is contained in material which is commercially sponsored," NRS § 597.790(2)(a) nonetheless exempts liability where "the use is not directly connected with the commercial sponsorship." Here, nothing about the display of Plaintiff's name and other public record information indicated in any way that Plaintiff sponsored or endorsed Check Them. *See, e.g., Jackson v. Robinhood Markets, Inc.*, No. 21-CV-02304-LB, 2021 WL 2435307 *4 (N.D. Cal. June 15, 2021) (dismissing California right of publicity and Lanham Act claims on standing grounds, where Robinhood's use of plaintiff's identity "does not suggest that the plaintiff endorsed Robinhood" and plaintiff did not "allege how Robinhood's use of his identity created the misapprehension that the plaintiff sponsored, endorsed, or is affiliated with Robinhood"); *see also Obado*, 2014 WL 3778261, at *7 (dismissing right of publicity claim against search engine

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

-14-

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

websites based on CDA Section 230 immunity, where "[t]he mere appearance of Plaintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the relevant company used Plaintiff's name for advertising or trade purposes").

Importantly, not only was no endorsement indicated but this is not a situation like a billboard, radio, television, print, or even an online advertisement where a defendant is alleged to have used plaintiff in an advertising campaign. Rather, like someone referring to the index of an encyclopedia or an online directory, the use of Plaintiff's name and public record information followed a search by the user and then was merely incidental and related to the product offered for sale.  In *Dobrowolski v. Intelius, Inc.,* No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), the court addressed nearly identical facts and dismissed plaintiff's right of publicity claim, finding plaintiff's identity was not even used for a commercial purpose since it was "not used to promote a separate product—[it was] used because plaintiffs are part of the product offered for sale."  The same is true here.

Plaintiff may try to rely on *Sessa* for the proposition that Check Them was advertising a purportedly separate product from the underlying background report—namely, a subscription service. But that is refuted by the Complaint itself, which includes the so-called "Marketing Page" of which Plaintiff complains. Compl. Fig 1. This screenshot does not even mention a subscription, much less promote or offer to sell one. *Id.* In any event, the purported report/subscription distinction does not apply here because, as the Complaint concedes, a subscribing user can access "the report for the searched individual" as well as "unlimited access to the information on anybody in its database." Compl. ¶ 19. The subscription is the vehicle through which users review the report they selected; it then merely allows the user to access other reports in addition to that one.

This is a significant point because courts have long rejected right-of-publicity claims against publishers for using a person's identity to promote a publication, even a publication sold on subscription, that includes information about that person as well as other people. *See, e.g., Cher v. Forum Intern. Ltd*, 692 F.2d 634, 639 (9th Cir. 1982) ("Forum would have been entitled to use Cher's picture and to refer to her truthfully in subscription advertising for the purpose of

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1   indicating the content of the publication"); *Montana v. San Jose Mercury News, Inc.*, 34 Cal.

2   App. 4th 790, 796 (1995); *Namath v. Sports Illustrated*, 48 A.D.2d 487, 490, 371 N.Y.S.2d 10,

3   13  (1975), *aff'd*, 39  N.Y.2d  897,  352 N.E.2d  584  (1976); *Restatement  (Third)  of  Unfair*

4   *Competition* § 47 reporter's note cmt. a, Westlaw (database updated Oct. 2021) (collecting

5   cases). Plaintiff's theory would upend this settled law and render unlawful countless media

6   websites, such as YouTube, IMDb.com, or Encyclopedia Britannica, which allow users to search

7   and  view  content  identifying  people  for  free  while  simultaneously  advertising  premium

8   subscription services.

9        ii.    The use is in connection with "public affairs."

10       NRS § 597.790(2)(c) likewise bars Plaintiff's claim as it exempts from liability the use of

11   a person's name or likeness "in connection with a news [or] public affairs ... publication." It is

12   immaterial whether the use occurs in connection with a for-profit enterprise. *See, e.g., Leidholdt*

13   *v. L.F.P. Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) (rejecting misappropriation claims under

14   analogous California and New York statutes based on public affairs exception and holding,

15   "[t]he fact that Hustler Magazine is operated for profit does not extend a commercial purpose to

16   every article within it."); *White v. City of Sparks*, 341 F. Supp. 2d 1129, 1137 (D. Nev. 2004),

17   *aff'd*, 500 F.3d 953 (9th Cir. 2007) ("[I]t is unquestioned that the First Amendment protection is

18   not lost simply because the protected expression is sold for profit.").

19       Nor is the exception "limited to 'news' in the narrow sense of reports of current events. It

20   extends also to the use of names, likenesses or facts in giving information to the public for

21   purposes  of  education,  amusement  or  enlightenment,  when  the  public  may  reasonably  be

22   expected to have a legitimate interest in what is published." *Shulman v. Grp. W Prods., Inc.*, 18

23   Cal. 4th 200 (1998) (citations and internal quotation marks omitted); *see also Carlisle v. Fawcett*

24   *Publ'ns, Inc.*, 201 Cal. App. 2d 733, 746 (1962) ("The privilege of printing an account of

25   happenings and of enlightening the public as to matters of interest is not restricted to current

26   events; magazines and books, radio and television may legitimately inform and entertain the

27   public with the reproduction of past events, travelogues and biographies.").

28       Conversely, this district court has found that even where information is within the scope

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

of public affairs, it will not fall under the public affairs exemption when it is published for solely commercial purposes as opposed to a publication in the public interest. *Sessa v. Ancestry.com*. (citing *Fraley v. Facebook*, 830 F.Supp. 2d 785, 805 (N.D. Cal. 2011). In *Fraley*, plaintiffs complained of Facebook's exploitation of their "names or profile images next to statements about pages or content they 'Like'" as an indication of plaintiffs' endorsement of those pages or content. *Id.* at 804. Here, however, Plaintiff does not complain that her identity was used to endorse an *unrelated* product or to exploit her "consumer opinion" for commercial gain. *Id.* Instead, Plaintiff's name and associated information is both the product and the information that is within the scope of public interest.

The public information available on CheckThem.com consists precisely of "facts in [which] . . . the public may reasonably be expected to have a legitimate interest." *Shulman,* 18 Cal. 4th at 225. It certainly falls within the broad swath of content that "legitimately inform[s] [or] entertain[s] the public." *William O'Neil & Co. v. Validea.com Inc*., 202 F. Supp. 2d 1113, 1117 (C.D. Cal. 2002) (citation omitted). Further, advertisements for an exempted publication are "protected to the same extent as the [publication] itself," and thus cannot be the basis of a right of publicity claim. *Id.* at 1119. Therefore, Check Them's search results are shielded from liability even if one accepts the Complaint's characterization of them as advertisements or "marketing."

       iii.    <u>The use is an attempt to portray Plaintiff in a book or visual program.</u>

Finally, Plaintiff's claim is barred by NRS § 597.790(2)(d) as it exempts from liability the use of a person's name or likeness in an "attempt to portray … a person in a … book, magazine article, newspaper article … or visual program, except where the use is directly connected with a commercial sponsorship."  By providing information and background reports about people, Check Them is essentially an online encyclopedia about people.  As such, Check Them's free search results and its background reports qualify as a "book" or "visual program."  It makes no difference that the speech is online.  *See Reno v. ACLU*, 521 U.S. 844, 853 (1997) (internet is comparable to "a vast library including millions of readily available and indexed publications"); *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011) ("the creation and

dissemination of information is speech for First Amendment purposes"); *Ona v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1130 (9th Cir. 2006) ("web content is functionally identical to traditional print media"). Just like an author can use a person's name to advertise a book about them, so too can Check Them.

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) is particularly instructive. The plaintiff alleged Amazon violated Florida's right of publicity law through online advertising that displayed plaintiff's image on the cover of a book offered for sale. The Eleventh Circuit disagreed:

> [W]e find that, as a matter of business practice, Amazon's use of book cover images closely simulates a customer's experience browsing book covers in a traditional book store. Thus, it is clear that Amazon's use of book cover images is not an endorsement or promotion of any product or service, but is merely incidental to, and customary for, the business of internet book sales. … Under the allegations of [plaintiff's] complaint, we discern no set of facts by which an internet retailer such as Amazon, which functions as the internet equivalent to a traditional bookseller, would be liable for displaying content that is incidental to book sales, such as providing customers with access to a book's cover image and a publisher's description of the book's content.

*Id.* (citations omitted). There is no material factual or legal distinction between Amazon's use of someone's name on a book cover to sell a book about them and Check Them's use of Plaintiff's name to sell a background report about her. In all respects, this is an attempt to portray a person in a work about that person.[4]

---

[4] *See also K and K Productions v. Walt Disney Studios Motion Pictures*, 2:20-cv-1753, 2021 WL 4394787, *5 (D. Nev. Sept. 9, 2021) (dismissing NRPL claim concerning Evel Knievel's identity in movie, because "[t]o the extent . . . [this] is an attempt to portray, imitate, or simulate, or impersonate Evel Knievel, it is nevertheless permissible in a film and its advertisements"); *Aldrin v. Topps Co., Inc.*, No. 10-09939, 2011 WL 4500013 *3 (C.D. Cal. Sept. 27, 2011) (dismissing right of publicity claim concerning Buzz Aldrin's information on a novelty card because the use of his information was not "linked to products that bore no relationship" to plaintiff—rather, "the speech *is* the product, and is protected") (emphasis in original).

-18-

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

Check Them is not unique. All variety of businesses allow consumers to search for a name on their website and to then see search results that use someone's name to identify if the business has an informational product about that person. There are countless newspapers and magazines online that allow people to search their sites for information about people.  There are countless bookstores, sports card memorabilia, or other entertainment websites that allow people to search their sites for information about people. Many of these businesses offer free content about people and also sell content about people often via subscription. By simply doing this, the businesses are not violating the NRPL. Neither is Check Them.  Applying the statute's plain language and exemptions, Plaintiff's Complaint should be dismissed

**V.      Plaintiff's Claim Is Barred By The First Amendment.**

"[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). As the U.S. Supreme Court has recognized, information sourced from public records, and thus already in the public domain is entitled to broad First Amendment protection. *See*, *e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010) (displaying the contents of public records is a matter of public concern).

Thus, the First Amendment has always protected directories of names, addresses, phone numbers, and other identifying information. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) ("[Y]ellow pages directories qualify for full protection under the First Amendment."); *Health Sys. Agency of N. Va. v. Va. State Bd. of Med.*, 424 F. Supp. 267, 272–73 (E.D. Va. 1976) (publication of physician information, including name and phone number protected); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386-89 (N.D. Ill. 2016) (First Amendment precludes IRPA liability for attorney directory with "information gleaned from public records"). This is exactly the type of information presented about Plaintiff. From a constitutional perspective, there is no distinction between Check Them's search results and a yellow pages directory, *Dex*, 696 F.3d at 962, a directory of attorney information, *Vrdolyak*, 206 F.Supp.3d at 1389, or a physician directory, *Health Sys. Agency*, 424 F. Supp. at 272. Because the search results are factual and truthful information in the public domain and found in public

records, Check Them's display of this information is subject to full First Amendment protection.

This conclusion is supported by the Ninth Circuit's recent decision in *IMDb.com Inc. v. Becerra,* 962 F.3d 1111 (9th Cir. 2020). The Ninth Circuit considered whether the State of California could require IMDb, an "online database of information" containing biographical information about actors, to remove a person's age upon request. The Ninth Circuit found that IMDb's free profiles about people are encyclopedic in nature, are non-commercial speech, and thus entitled to full First Amendment protection.

> *The facts here do not present a close question; public profiles on IMDb.com do not 'propose a commercial transaction.'* These free, publicly available profiles are found in an 'online database of information' and are surrounded by content that 'includes information on cast, production crew, fictional characters, biographies, plot summaries, trivia and reviews.' *The content is encyclopedic, not transactional*.

*Id.* at 1122. This is true even though IMDb public profiles link to IMDbPro – a paid subscription where users can access additional information about IMDb's database of actors and actresses. *Id.* at 1117. In the same way that IMDb's free profiles about people were entitled to full First Amendment protection, so too are Check Them's search results.

Courts have further routinely recognized that public, governmental records cannot be constitutionally restricted. *See Publius v. Boyer-Vine,* 237 F. Supp. 3d 997, 1018 (E.D. Cal. 2017) ("However, when the government itself injects personal identifying information into the public domain, it cannot credibly take the contradictory position that one who compiles and communicates that information offends a compelling state interest.") (quoting *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1147 (W.D. Wash. 2003)). Check Them reports contain "criminal background information," which could only be sourced from governmental records. *See* Compl. ¶ 14. Such public records are a matter of public concern that are protected under the First Amendment. *See Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Cir. 2010) (finding a state law prohibiting a citizen's re-publication of public records containing full social security numbers unconstitutional as the public records were a matter of public significance). The U.S. Supreme Court has broadly held that "[p]ublic records by their very nature are of interest to those connected with the administration of government, and a public benefit is performed by the

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

reporting of the true contents of the records by the media." *Cox Broad. Corp.*, 420 U.S. at 495.

Finally, even if Check Them's search results are characterized as advertisements and commercial speech, the search results are still protected by the First Amendment to the same extent as the background reports they advertise are protected. *See, e.g.*, *Bolger*, 463 U.S. at 66–67 & n.14 ("The mere fact that these pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech," and where pamphlets advertise speech protected by the First Amendment they should be deemed non-commercial speech); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises" it.).[5]

## VI.   Plaintiff's Liability Theory Violates The Dormant Commerce Clause.

When a state regulates out-of-state conduct, it is a *per se* violation of the Dormant Commerce Clause. *See e.g.*, *Healy v. Beer Inst.*, 491 U.S. 324, 336–37 (1989) ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory

---

[5] *Accord Namath v. Sports Illustrated*, 363 N.Y.S.2d 276, 278-80 (Sup. Ct. 1975) (magazine's use of Joe Namath's identity to advertise subscription protected by First Amendment), *aff'd*, 371 N.Y.S.2d 10 (App. Div. 1st Dep't 1975), *aff'd*, 39 N.Y.2d 897, 898 (1976); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (Ct. App. 1995) (newspaper's use of Joe Montana's identity to advertise subscription protected); *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir. 1995) (advertisement for book that quoted another author's book and displayed his image was protected "incidental use"); *William O'Neil & Co.*, 202 F. Supp. 2d at 1119 (material advertising a book is "an adjunct" of the book, it is protected to the same extent as the book itself); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996) (promotional speech may be noncommercial if it advertises an activity itself protected by the First Amendment); *Esch v. Universal Pictures Co.*, No. 09-cv-02258, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010) (a movie trailer is protected under the First Amendment as it is a part of a protected work).

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101

1   regime into the jurisdiction of another State."). Plaintiff's proposed application of NRPL is thus a

2   per se violation of the Dormant Commerce Clause because she seeks to regulate conduct—the

3   publication of Plaintiff's name and identity to users—occurring outside the State of Nevada.

4          Even if Plaintiff had alleged that the conduct occurred in Nevada, a state statute that

5   burdens, but that does not facially discriminate against, interstate commerce violates the

6   Constitution's Commerce Clause if it excessively burdens interstate commerce in relation to its

7   benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Facially neutral statutes that create a

8   disparate impact on interstate commerce are analyzed under *Pike.* Under *Pike*, a facially neutral

9   state law violates the Commerce Clause if "the in-state regulatory benefits of a law outweigh the

10  out-of-state burdens the law places on interstate commerce." *Am. Beverage Ass'n v. Snyder*, 735

11  F.3d 362, 379 (6th Cir. 2013). Here, applying NRPL would burden Check Them's ability to

12  engage in interstate commerce in a way that is out of proportion to the *de minimis* state interest in

13  those results.

14         There is no reasonable connection between the intended aims of NRPL to protect against

15  the use of a person's identity for a commercial purpose and a prohibition on Check Them's

16  display of search results in response to user-generated queries for information included in Check

17  Them's background reports sourced from publicly available information. So the state's interest

18  here would appear to be negligible at best. This negligible interest is far outweighed by the

19  burden on interstate commerce of applying NRPL as Plaintiff desires. Because of the nature of

20  the internet, Check Them's business is inherently nationwide and interstate. *See Publius*, 237 F.

21  Supp. 3d at 1024 ("'Because the internet does not recognize geographic boundaries, it is difficult

22  … for a state to regulate internet activities without project[ing] its legislation into other States.'")

23  (quoting *Am. Booksellers Found. v. Dean,* 342 F.3d 96, 103 (2d Cir. 2003)). Yet, if NRPL

24  forbids Check Them's search results, as Plaintiff maintains, Check Them must continually

25  ascertain the precise physical location of each user who views a search result, and then block

26  search results from displaying to users if they are physically located in Nevada. Check Them's

27  only alternative would be to apply the restrictions imposed by Nevada's law nationwide, even

28  though other states may have no right of publicity law or one that differs in scope from Nevada's

law.

Forcing Check Them to choose between excising Nevada from its nationwide transmission of search results—to the extent that is even technologically feasible, which is doubtful—or treating NRPL as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would impermissibly regulate interstate commerce by controlling conduct beyond Nevada's borders. This is just what the Commerce Clause forbids.

## CONCLUSION

As set forth above, this Court lacks personal jurisdiction over Check Them because Check Them has insufficient contacts with Nevada and, what contacts do exist, were created by Plaintiff's counsel to create Plaintiff's claim. Check Them is also entitled to immunity under Section 230 of the CDA because, as Plaintiff alleges, the displayed information giving rise to Plaintiff's claim originates from third parties. Plaintiff's claim should also be dismissed because Plaintiff cannot establish that Check Them's alleged use of Plaintiff's identity was a "commercial purpose" under NRPL and because the NRPL Exemptions contained in NRS §§ 597.790(2) squarely apply. Lastly, Plaintiff cannot state a claim because Check Them's search results and display of factual, public information enjoy protection under the First Amendment. For these reasons, the Court must dismiss Plaintiff's claim. Further, Check Them requests that the Court strike Plaintiff's Complaint and, should the Court grant the motion, Check Them should be awarded its attorney's fees and costs pursuant to NRS § 41.670.

1

2
Date: February 25, 2022

3
GORDON REES SCULLY
MANSUKHANI, LLP
4

5
*/s/ Brian K. Walters*
300 So. 4th Street, Suite 1550
6
Las Vegas, Nevada 89101
Telephone:  (702) 577-9300
7
Facsimile:  (702) 255-2858
E-Mail:  bwalters@grsm.com
8

9
*Attorneys for Defendant Check Them Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, Nevada 89101**